**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SALLIE CREECH,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Civil No. AW-03-3150** |
| **DONALD RUMSFELD,** | * | |
| **Defendant.** | * | |

******

**MEMORANDUM OPINION**

By consent of the parties, the Court has received Plaintiff's Motion for Award of Statutory Attorneys' Fees and Costs as the Prevailing Party ("Plaintiff's Motion")(Docket No. 30). The Court has reviewed Plaintiff's Motion, and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). In her motion, Plaintiff seeks an award in the amount of $292,020.60 for attorneys' fees, as well as costs in the amount of $10,324.25. While the Court GRANTS Plaintiff's Motion and will make an award for fees and costs, the Court's calculation for a fee award is significantly different.

## I. Background.

In July 2000, Plaintiff filed a discrimination claim against her employer complaining of unlawful conduct by her co-worker, John Mikell. The parties participated in the EEO process, including discovery and a full briefing on Plaintiff's Motion for Summary Judgment. Testimony and evidence were presented during hearings held in December 2001 and March 2002 before an administrative law judge ("ALJ"). On August 29, 2003, the ALJ issued a decision in favor of Defendant on Plaintiff's claims of hostile environment and retaliation.

In November 2003, Plaintiff filed a complaint in this court which was met, prior to the onset of discovery, with the filing of Defendant's Motion for Summary Judgment. One year later, on November 23, 2004, the Court ruled on Defendant's Motion for Summary Judgment by announcing Defendant as the victor on the retaliation claim. Discovery was then initiated on the remaining count. Thereafter, the parties agreed to engage in settlement discussions.

On July 21, 2005, after five years of litigation, a settlement was reached. For the purpose of resolving the attorneys' fees issue, the parties agreed that Plaintiff is the "prevailing party" consistent with the requirements of Farrar v. Hobby, 506 U.S. 103 (1992). The parties have further agreed that as the judge who conducted the settlement conference, I should resolve the issue of the fee award.

**II. Calculation of a Reasonable Attorney's Fee.**

It is well established that in determining a reasonable attorney's fee award, that the Court should engage in a "Lodestar" calculation. Under this formula, the Court is to multiply the number of reasonable hours expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Costar Group, Inc. v. Loopnet, Inc., 106 F. Supp. 2d 780, 787 (D. Md. 2000). While the award of attorney's fees is discretionary with the Court, it must be supported by detailed findings of fact with regard to the factors considered. Barber v. Kimbrells, Inc., 577 F.2d 216, 226 (4th Cir. 1978). The Fourth Circuit follows the principles announced in Johnson v. Georgia Highway Express, Inc. 488 F.2d 714 (5th Cir. 1974), which sets forth twelve factors for the Court's consideration. They are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs impressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation;

> (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client, and (12) attorneys' fees awards in similar cases.

Johnson, 488 F.2d at 717-19. While the Court will make reference to many of the factors, the Court finds factors (1) and (8) to be most critical in its determination. Additionally, to the extent the Court makes an award for fees, the amount of actual damages recovered by Plaintiff is not controlling. Any notion of proportionality has been expressly rejected by the Supreme Court. Riverside v. Rivera, 477 U.S. 561, 574 (1986). Accordingly, Plaintiff's claim for fees is not capped at an amount equal to the value of the settlement reached.[1]

**III. Degree of Success Obtained.**

The most important factor in considering an award for fees is the degree of success obtained. One aspect of such a calculation is a comparison of what amount was awarded, compared to the amount hoped for. The amount hoped for here is limited by law, particularly since Plaintiff made no claim for lost wages. While, no specific monetary amount was sought in the complaint, Defendant notes that in the papers associated with the filing of the complaint, Plaintiff sought $300,000.00, which is the maximum award available under the cap on compensatory damages. It is in this context that Plaintiff believes the settlement reached was an "excellent result."

---

[1] In light of the confidential nature of the settlement, the Court will not disclose the terms of the agreement.

**A. Plaintiff's Retaliation Claim Is Not Intertwined With Her Hostile Work Environment Claim.**

Under the Johnson analysis, the Court is to compare the amount in controversy to the result obtained, which is the eighth Johnson factor.

> Thus, if the Plaintiff only succeeded on claims that encompassed 'distinctly different . . . facts and legal theories' from the claims on which the Plaintiff lost, the 'work on the unsuccessful claims cannot be deemed to have been expended in pursuit of the ultimate result achieved' Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983).

Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92, 97 (4th Cir. 1993). In the present case, the degree of success obtained by Plaintiff overall is very much a disputed issue given that no forum has found validity in her retaliation claim.

As Plaintiff is the prevailing party as to one of the two claims pursued, an issue to be determined is whether the two claims are separate and distinct, or so intertwined factually and legally as to be treated as one. The issue is one of "relatedness." Buffington, 913 F.2d at 128, Hensley, 461 U.S. at 435.

The reasoning in the Court's favorable ruling upon Defendant's Motion for Summary Judgment, supports the conclusion that the claims were based on "distinctly different . . . facts and legal theories." As the Court stated in rejecting the retaliation claim,

> Creech has not presented any evidence that her EEO complaint spurred a malicious desire in Defendant to retaliate against her for complaining about Mikell's behavior. If anything, the agency was motivated to step up its efforts with regards to Creech's harassment claim, as it was concerned about the threat of a lawsuit. Although the agency did not promptly act to remedy the situation once Plaintiff made a complaint before the EEO office, the Court finds no evidence that the agency actively retaliated against Plaintiff for filing the complaint. As such, this Court cannot find that the agency's actions constituted an adverse employment action under Title VII.

This ruling makes plain that the actions which formed the basis for Plaintiff's success on the hostile environment claim are very different from the lack of evidence which led to Plaintiff's loss on the retaliation claim. The former was concerned with the long-term, severe and pervasive hostile climate as allegedly created by Plaintiff's co-worker, while the latter focused primarily on the conduct of Plaintiff's employer in its stance toward Plaintiff after the filing of her EEO complaint. One claim dealt with an intense, direct, on-going, and dynamic factual history, the second was reduced to having no factual support whatsoever. The legal and factual underpinnings for one claim were not sufficiently related to the other so as to allow an award for fees for all work done.

In granting Defendant's Motion for Summary Judgment, the Court conceded that Defendant followed a policy of avoiding of the brewing conflict between Plaintiff and Mr. Mikell. Plaintiff's Exhibit 29 sets forth Plaintiff's long-standing argument that Defendant did not aggressively intercede on Plaintiff's behalf. Plaintiff presented factual information from various supervisors and co-workers to show that Defendant was aware of harassing conduct by Mr. Mikell and effectively did nothing. Plaintiff's claim of retaliation by avoidance is not co-equal to, or substantially similar to, Plaintiff's evidence of hostility by Mr. Mikell. The Court does not find the facts to be so intertwined that they should be treated as one. The Court finds the hostile work environment claim to be factually distinct from Plaintiff's claim of retaliation in the development of this case.

**B. Plaintiff Achieved Good Results, Not "Excellent Results."**

Plaintiff rightly notes that the adverse result by the ALJ placed her claims at a distinct disadvantage. Additionally, the majority of discrimination actions filed in this Court do not survive the motion for summary judgment. With these two stumbling blocks to consider, Plaintiff's degree of success on the merits is significant.

Plaintiff makes great effort to show that her settlement result was far superior to those of similar cases. Comparisons are made using reports which show the total number of federal employees who filed EEOC complaints, the total number of claims resolved, and the number of claimants receiving a pre-complaint monetary benefit, with the final analysis reflecting an average benefit received of a mere $248.00 for claims resolved in calendar year 2000. This is a creative, but only marginally helpful attempt to assist the Court in quantifying the degree of success achieved by Plaintiff. Plaintiff's calculations present merely a measurement by volume and not merit. The Court must look for a more qualitative method.

More probative was Plaintiff's comparisons with other reported cases as found in other publications and sources. Plaintiff has also provided affidavits from practitioners in the field who opine that the result achieved in her case is outstanding. In opposition, Defendant provides a listing of recent compensatory awards which would suggest that the success claimed by Plaintiff is not extraordinary at all. In that regard, the Court agrees with Defendant that the most meaningful comparison is with identical claims filed with this Court.

Both the parties and the Court are greatly hampered by the limited access to reliable, publicly available information reflecting dispositions by way of settlement or trial. As the settlement judge, however, this Court is of the opinion that the result obtained, while good, is not extraordinary. Magistrate judges in this district conduct a huge number of settlement

conferences. My colleagues and I frequently consult on the value of cases for settlement and trial. In any given month during the past eight years, one-third of my calendar has been reserved for settlement conferences. The majority of these conferences have involved employment discrimination claims. Many of these cases include differing degrees of confidentiality making public knowledge of the details nearly impossible. It is in this context that I am of the opinion that the settlement sum reached was in the range of reasonableness for the factual and legal issues involved in the case. The Court does not conclude that Plaintiff's success should be considered as "excellent" or "outstanding" to such a degree that Plaintiff should enjoy a fully compensable fee. While this does not result in a mathematical division of a fee award by 50%, the Court is to factor the lack of success on the retaliation claim into the equation for a reasonable fee. The Court is required to,

> [F]ocus on the significance on the overall relief obtained by the Plaintiff in relation to the hours reasonably expended in litigation . . . Litigants in good faith may raise alternative legal grounds for a desired outcome and the Court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Hensley, 461 U.S. at 435, 436. Given the fact-intensive nature of the hostile environment claim, the Court believes that the majority of Plaintiff's efforts prior to the Court's ruling on Defendant's Motion for Summary Judgment were devoted to the examination and analysis of the hostile work environment claim.

> Moreover, 'if the District Court determines that the unsuccessful claims . . . were indeed unrelated to the successful ones, the burden of showing which hours are recoverable for work on the successful claims will of course rest with the fee applicant.' Buffington v. Baltimore County, 913 F.2d 113, 128 (4th Cir.), reh'g denied (1990).

Fair Housing Council of Greater Washington, 999 F.2d at 97. Plaintiff's billing records make no attempt to parse the efforts of counsel between the respective claims.

The Court is aware of the comment in Hensley that a mathematical approach comparing the total number of issues in the case with those actually prevailed upon is inappropriate, and where a party has received "excellent results" the fee award should not be reduced. The Fourth Circuit has also recognized that a significant reduction of requested fees is appropriate when the request was not properly documented in its billing records. Montcalm Publishing Corp. v. Virginia, 199 F.3d 168 (4th Cir. 1999). While the Court understands that Plaintiff believes the claims are inseparable, the end result is that Plaintiff has not set forth with sufficient clarity, the hours spent solely on one claim versus another. See Uzzell v. Friday, 618 F. Supp. 1222 (M.D.N.C. 1985), and Hensley, 461 U.S. at 437. Accordingly, the Court will reduce the reasonable hours portion of all areas prior to November 23, 2004, by 40% in light of the Court's view that the majority of effort expended by Plaintiff in the prosecution of her claims was necessary and appropriate for the favorable result obtained. See also Costar, 106 F. Supp. 2d at 788 (the court may reduce the number of hours awarded if the documentation is vague or incomplete).

**IV. Time and Labor Expended.**

The first factor under the Johnson decision focuses on the time and labor expended. The Court has reviewed the arguments of counsel regarding specific time entries. The prevailing party bears the burden of proof in providing sufficiently detailed time records. Fair Housing Council of Greater Washington, 999 F.2d at 97, Daley v. Hill, 790 F.2d 1071, 1079 (4th Cir. 1986). If some claims were unsuccessful, the prevailing party bears the burden of showing which hours are recoverable. Buffington, 913 F.2d at 127. Defendant has a similar duty to

specify with particularity the basis for any objections. Thompson v. U.S. Department of Housing and Urban Development, 2002 WL 31777631 (D. Md.). Given that there are federal defendants, Plaintiff is not entitled to use current rates for fees, only historic rates. National Wildlife Federation v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988). The Court finds the following entries reasonable under the circumstances:

a) time expended on the witness list preparation, and

b) 55 hours of legal research given the breadth of the issues involved.

Plaintiff in large measure concedes the following deletions from her calculations:

a) 1.2 hours of Goldsmith time regarding an erroneous phone mail entry;

b) 1 hour of Martin time for identical service occurring on September 21, 2001;

c) the reduction of paralegal, administrative, and secretarial charges; and

d) eight-tenths of an hour of Goldsmith time for being the second attorney in attendance at the Brooks deposition.

The Court will also reduce Plaintiff's claim in the following areas:

a) 8.7 hours of Martin time for conferencing with Goldsmith in light of this Court's Appendix B Rules and Guidelines for determining Lodestar Attorney's Fees in Civil Rights and Discrimination Cases Section 2e;

b) 50 hours of Goldsmith time for the preparation of the Motion for Attorneys' Fees. While the Court does not dispute the actual expenditure of time, the claim for 100 hours appears unreasonable in light of the total hours expended on this case as set forth in Defendant's Opposition;

c) 5 hours of Goldsmith time and 2 hours of Showalter time for the drafting of the complaint which was substantially complete given the earlier submission to the EEOC.

The Court does not find the remaining contentions of Defendant to be supported with sufficient particularity.

**V. Customary Fees and Awards in Similar Cases.**

Johnson factors five and twelve are the customary fees for like work and fee awards in similar cases. This Court finds most instructive the Appendix B Rules and Guidelines. While fair argument can be made that the "Laffey Matrix" should be applied, the Court does not find that Plaintiff has made a sufficient case to show that the Appendix B Rules and Guidelines should be discarded. The Court is of the opinion that the legal services provided were available locally, and the hourly rates requested do not trump the presumptive reasonableness of Appendix B. The Court will apply the Appendix B rates to the hours found to be reasonable.

**VI.**

The Court finds Plaintiff's request for costs to be reasonable and supported by the record. Defendant has not articulated with specificity why such costs should not be awarded. Accordingly, the Court shall order the payment of costs in the full amount of $10,324.25

**VI. Conclusion.**

The Court finds that Plaintiff is entitled to hours and rates as set forth in the Appendix to be reasonable, after deducting 40% for time incurred before November 23, 2004. Accordingly, Plaintiff is entitled to attorney's fees in the amount of $159,698.00 (see Exhibit A attached hereto), and costs in the amount of $10,324.25, for a total of $170,022.25. It is so Ordered this **23rd** day of **December, 2005.**

/s/
Charles B. Day
United States Magistrate Judge

**EXHIBIT A**

| Year | Task | User | Hours | Rate | Subtotal | Adjustment* |
|---|---|---|---|---|---|---|
| 2005 | Attorney's Fees | Goldsmith | 37.5[1] | $ 275.00 | $ 10,312.50 | $ 10,312.50 |
| 2005 | Attorney's Fees | Marker | 12.6 | $ 150.00[2] | $ 1,134.00 | $ 1,134.00 |
| 2000 | Case Preparation | Goldsmith | 2.2 | $ 225.00 | $ 495.00 | $ 297.00 |
| 2001 | Case Preparation | Goldsmith | 4.9 | $ 275.00 | $ 1,347.00 | $ 808.20 |
| 2002 | Case Preparation | Goldsmith | 1.0 | $ 275.00 | $ 275.00 | $ 165.00 |
| 2003 | Case Preparation | Goldsmith | 2.9 | $ 275.00 | $ 795.00 | $ 477.00 |
| 2005 | Case Preparation | Goldsmith | .9 | $ 275.00 | $ 247.50 | $ 247.50 |
| 2001 | Case Preparation | Martin | 32.2[3] | $ 275.00 | $ 6,462.50 | $ 3,877.50 |
| 2002 | Case Preparation | Martin | 6.6 | $ 275.00 | $ 1,815.00 | $ 1,089.00 |
| 2003 | Case Preparation | Schowalter | 1.5 | $ 90.00 | $ 135.00 | $ 81.00 |
| 2004 | Case Preparation | Marker | .4 | $ 150.00 | $ 60.00 | $ 60.00 |
| 2005 | Case Preparation | Marker | 5.3 | $ 150.00 | $ 795.00 | $ 795.00 |
| 2001 | Depositions/Prep | Goldsmith | 6.5[4] | $ 275.00 | $ 1,512.50 | $ 907.50 |
| 2005 | Depositions /Prep | Goldsmith | 2.7 | $ 275.00 | $ 742.50 | $ 742.50 |
| 2001 | Depositions/Prep | Martin | 102.8[5] | $ 275.00 | $ 27,995.00 | $ 16,797.00 |
| 2005 | Depositions/Prep | Marker | .3 | $ 150.00 | $ 45.00 | $ 45.00 |
| 2001 | Depositions/Prep | Schowalter | .4 | $ 90.00 | $ 36.00 | $ 21.60 |

---

[1] 50 hours of Goldsmith time for the preparation of the Motion for Attorney's Fees.

[2] Reduced to the paralegal rate of $90.00 per hour due to the nature of the services provided.

[3] Subtract 8.7 hours for time spent in consultation with Goldsmith (net 23.5 hours)

[4] Subtract 1.0 hour for attendance at the Brooks deposition as second counsel - net 5.5 hours.

[5] Reduced by 1.0 hour for duplicated time entry - net 101.8 hours

* Adjusted yearly total after deducting 40% for any time incurred before November 23, 2004.

| Year | Task | User | Hours | Rate | Subtotal | Adjustment* |
|---|---|---|---|---|---|---|
| 2001 | Discovery | Goldsmith | 9.5 | $ 275.00 | $ 2,612.50 | $ 1,567.50 |
| 2003 | Discovery | Goldsmith | .1 | $ 275.00 | $ 27.50 | $ 16.50 |
| 2004[6] | Discovery | Goldsmith | .1 | $ 275.00 | $ 27.50 | $ 16.50 |
| 2004 | Discovery | Goldsmith | 5.0 | $ 275.00 | $ 1,375.00 | $ 1,375.00 |
| 2005 | Discovery | Goldsmith | 17.4 | $ 275.00 | $ 4,785.00 | $ 4,785.00 |
| 2001 | Discovery | Martin | 89.4 | $ 275.00 | $ 24,585.00 | $ 14,751.00 |
| 2005 | Discovery | Marker | 13.7 | $ 150.00 | $ 2,055.00 | $ 2,055.00 |
| 2001 | Motions | Goldsmith | 22.6 | $ 275.00 | $ 6,215.00 | $ 3,729.00 |
| 2004[7] | Motions | Goldsmith | 37.4 | $ 275.00 | $ 10,285.00 | $ 6,171.00 |
| 2005 | Motions | Goldsmith | 2.7 | $ 275.00 | $ 742.50 | $ 742.50 |
| 2001 | Motions | Martin | 115.1 | $ 275.00 | $ 31,652.50 | $ 18,991.50 |
| 2002 | Motions | Martin | 2.7 | $ 275.00 | $ 742.50 | $ 445.50 |
| 2004[8] | Motions | Marker | 2.8 | $ 150.00 | $ 420.00 | $ 252.00 |
| 2005 | Motions | Marker | 4.5 | $ 150.00 | $ 675.00 | $ 675.00 |
| 2004[9] | Motions | Schowalter | 18.4[10] | $ 150.00 | $ 2,046.00 | $ 1,227.60 |
| 2000 | Pleadings | Goldsmith | 7.3 | $ 225.00 | $ 1,642.50 | $ 985.50 |
| 2001 | Pleadings | Goldsmith | 2.8 | $ 275.00 | $ 770.00 | $ 462.00 |
| 2003 | Pleadings | Goldsmith | 7.1[11] | $ 275.00 | $ 577.50 | $ 346.50 |

---

6 Prior to November 23, 2004.

7 Prior to November 23, 2004.

8 Prior to November 23, 2004.

9 Prior to November 23, 2004.

10 Reduce 11.9 hours to paralegal rate of $90.00 per hour ($1,071.00), 6.5 hours at rate of $150.00 per hour ($975.00).

11 Subtract 5.0 hours for the drafting of the Complaint - net 2.1 hours.

* Adjusted yearly total after deducting 40% for any time incurred before November 23, 2004.

| Year | Task | User | Hours | Rate | Subtotal | Adjustment* |
|---|---|---|---|---|---|---|
| 2003 | Pleadings | Schowalter | 6.4[12] | $ 90.00 | $ 396.00 | $ 237.60 |
| 2004 | Pleadings | Marker | .2 | $ 150.00 | $ 30.00 | $ 30.00 |
| 2000 | Settlement | Goldsmith | .8 | $ 225.00 | $ 180.00 | $ 108.00 |
| 2001 | Settlement | Goldsmith | 1.2 | $ 275.00 | $ 330.00 | $ 198.00 |
| 2002 | Settlement | Goldsmith | .1 | $ 275.00 | $ 27.50 | $ 16.50 |
| 2004 | Settlement | Goldsmith | .4 | $ 275.00 | $ 110.00 | $ 110.00 |
| 2005 | Settlement | Goldsmith | 34.6 | $ 275.00 | $ 9,515.00 | $ 9,515.00 |
| 2001 | Settlement | Martin | 7.5 | $ 275.00 | $ 2,062.50 | $ 1,237.50 |
| 2002 | Settlement | Martin | 8.3 | $ 275.00 | $ 2,282.50 | $ 1,369.50 |
| 2005 | Settlement | Marker | .3 | $ 150.00 | $ 45.00 | $ 45.00 |
| 2000 | Travel | Goldsmith | 1.5 | $ 225.00 | $ 337.50 | $ 202.50 |
| 2001 | Travel | Goldsmith | 7.0 | $ 275.00 | $ 1,925.00 | $ 1,155.00 |
| 2002 | Travel | Goldsmith | 1.9 | $ 275.00 | $ 522.50 | $ 313.50 |
| 2001 | Travel | Martin | 9.5 | $ 275.00 | $ 2,612.50 | $ 1,567.50 |
| 2002 | Travel | Martin | 1.9 | $ 275.00 | $ 522.50 | $ 313.50 |
| 2001 | Trial | Goldsmith | 16.5 | $ 275.00 | $ 4,537.50 | $ 2,722.50 |
| 2002 | Trial | Goldsmith | 6.5 | $ 275.00 | $ 1,787.50 | $ 1,072.50 |
| 2001 | Trial | Martin | 16.5 | $ 275.00 | $ 4,537.50 | $ 2,722.50 |
| 2002 | Trial | Martin | 6.5 | $ 275.00 | $ 1,787.50 | $ 1,072.50 |
| 2001 | Trial Prep/ Closing Brief | Goldsmith | 62.7 | $ 275.00 | $ 17,242.50 | $ 10,345.50 |
| 2002 | Trial Prep/ Closing Brief | Goldsmith | 3.0 | $ 275.00 | $ 825.00 | $ 495.00 |
| 2001 | Trial Prep/ Closing Brief | Martin | 80.8[13] | $ 275.00 | $ 21,477.50 | $ 12,886.50 |

[12] Subtract 2.0 hours for the drafting of the Complaint - net 4.4 hours.

[13] Subtract 2.7 hours as administrative - net 78.1 hours

* Adjusted yearly total after deducting 40% for any time incurred before November 23, 2004.

| Year | Task | User | Hours | Rate | Subtotal | Adjustment* |
|---|---|---|---|---|---|---|
| 2002 | Trial Prep/ Closing Brief | Martin | 94.0 | $ 275.00 | $ 25,850.00 | $ 15,510.00 |
| | **TOTAL** | | | | **$ 244,384.00** | **$ 159,698.00** |

* Adjusted yearly total after deducting 40% for any time incurred before November 23, 2004.